# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:15-cr-00017 |
| | 3:06-cr-00021 |
| v. | |
| | MEMORANDUM OPINION & ORDER |
| PAUL VINCENT BROWN, | |
| *Defendant.* | JUDGE NORMAN K. MOON |

Defendant Paul Vincent Brown is currently serving two sentences. In 2016, this Court sentenced Brown to 120 months' imprisonment after he pleaded guilty to one count of conspiracy to distribute cocaine base and heroin in violation of 18 U.S.C. § 846. No. 3:15-cr-17, Dkt. 21. At the same time, the Court sentenced Brown to 48 months' imprisonment for violating supervised release. No. 3:06-cr-21, Dkt. 150. Brown seeks a reduction of his 48-month sentence pursuant to § 404 of the First Step Act of 2018. No. 3:06-cr-21, Dkt. 172. He also seeks compassionate release from both sentences pursuant to 18 U.S.C. § 3582(c)(1). *Id.*; No. 3:15-cr-17, Dkt. 33 (collectively, Def. Brief). Brown argues that two extraordinary and compelling circumstances warrant his release. First, he claims that his obesity puts him at a higher risk of contracting COVID-19 and suffering severe complications if he does contract COVID-19. Second, he claims that he would no longer be sentenced as a career offender under the guidelines after *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019). Brown moves the Court to impose a sentence of time served. The United States agrees that Brown is eligible for consideration of a sentence reduction of his 48-month supervised release violation revocation sentence, but it opposes such a reduction and Brown's immediate release. No. 3:06-cr-21, Dkt. 179; No. 3:15-cr-17, Dkt. 41 (collectively, Gov. Brief).

1

The Court finds that Brown is eligible for a reduction in his revocation sentence and, after considering the relevant § 3553(a) factors, will reduce his revocation sentence to 34 months, to run consecutive to any other sentence imposed. In addition, the Court finds that the disparity in length of sentence Brown would face today post-*Norman* is an extraordinary and compelling reason for relief; taking the § 3553(a) factors into account, the Court will reduce Brown's to 86 months but will not grant his request for immediate release. Accordingly, the Court will grant in part and deny in part Brown's motions and modify his sentences to a total of 120 months.

## BACKGROUND

On March 1, 2000, Brown pleaded guilty to one count of conspiracy to possess with intent to distribute cocaine base in violation of 21 U.S.C. § 846. No. 3:99-cr-78, Dkts. 39; 40. On September 21, 2000, the Court sentenced him to 170 months' imprisonment followed by five years of supervised release. No. 3:99-cr-78, Dkt. 56. On September 9, 2002, the Court reduced his sentence to time served followed by three years of supervised release. No. 3:99-cr-78, Dkt. 71. Brown was released from state custody on July 2, 2004, and his term of supervision began on that date. No. 3:99-cr-78, Dkts. 76; 77.

On November 22, 2004, Brown violated the mandatory conditions of supervised release by selling cocaine base to a confidential informant observed by law enforcement. *Id.*; *see also* Dkt. 105.

On May 3, 2006, based on some of the same conduct underlying his supervised release violation, Brown was charged with one count of conspiracy to distribute fifty grams or more of cocaine base in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). No. 3:06-cr-21, Dkt. 17. On November 22, 2006, Brown pleaded guilty pursuant to a plea agreement. No. 3:06-cr-21, Dkt. 70. In the plea agreement, Brown acknowledged that he faced a mandatory minimum of 20 years and

a maximum of life imprisonment pursuant to 21 U.S.C. § 851 due to his prior felony drug conviction. No. 3:06-cr-21, Dkts. 70, 75. However, in exchange for his guilty plea, the United States agreed not to file a second felony enhancement, which would subject Brown to a mandatory life sentence. No. 3:06-cr-21, Dkt. 70. According to the presentence investigation report, Brown was held accountable for approximately 921.3 grams of cocaine base. No. 3:06-cr-21, Dkt. 191 ¶¶ 11, 16.

On March 13, 2007, the Court sentenced Brown to 240 months' imprisonment followed by 10 years of supervised release on this criminal offense—the mandatory minimum, and the bottom of his advisory guideline range of 240[1] to 293 months, *id.* ¶ 68—and a consecutive 30 months' imprisonment for his violation of supervised release. No. 3:06-cr-21, Dkt. 94; *see also* No. 3:99-cr-78, Dkt. 105. On May 27, 2008, the Court reduced Brown's sentence on the criminal offense to 120 months' imprisonment, resulting in a total sentence of 150 months' imprisonment. No. 3:06-cr-21, Dkt. 113.[2] On April 1, 2013, the Court further reduced Brown's sentence on the criminal offense to 60 months' imprisonment, resulting in a total sentence of 90 months' imprisonment. No. 3:06-cr-21, Dkt. 117. Brown was released from BOP custody on April 17, 2013, to serve his term of supervised release. No. 3:06-cr-21, Dkts. 118; 170.

---

[1] The bottom of the advisory guideline range would have been 235 months based on a total offense level of 33 and a criminal history category of VI, but the bottom of the guideline range could not be below the statutory mandatory minimum of 240 months. *See* U.S.S.G. § 5G1.1(c)(2).

[2] On April 15, 2009, the Court denied Brown's motion for sentence reduction under Amendment 706, which reduced Brown's offense level by two and would have resulted in an advisory guideline range of 188 to 235 months. The Court found that it had no authority to further reduce Brown's sentence because the statutory mandatory minimum of 240 months exceeded the top of the new guideline range. No. 3:06-cr-21, Dkt. 115. At any rate, Brown's sentence had already been reduced to 120 months, far below the bottom end of the theoretical guideline range after the offense level reduction.

On multiple dates in April 2015, Brown violated the mandatory condition of supervised release that he "shall not commit another federal, state, or local crime . . . [and] not illegally possess a controlled substance" by selling heroin and crack cocaine several times to a confidential information observed by law enforcement. *Id.*; *see also* Dkt. 150. The Court determined that Brown's conduct was a Grade A violation, and given his criminal history category of VI at the time of the original offense, the guidelines recommended a sentence of 51 to 60 months. No. 3:06-cr-21, Dkt. 170 at 3.

On December 16, 2015, based on some of the same conduct underlying his supervised release violation, Brown pleaded guilty pursuant to a plea agreement to one count of conspiracy to distribute and possess with intent to distribute heroin and cocaine base in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). No. 3:15-cr-17, Dkts. 7; 8. In the plea agreement, Brown stipulated that he was a career offender. No. 3:15-cr-17, Dkt. 7. According to the presentence investigation report, Brown was held accountable for at least 11.27 grams of heroin and 13.60 grams of crack cocaine, approximately equivalent to 59.83 kilograms of marijuana and corresponding to a base offense level of 18. No. 3:15-cr-17, Dkt. 17 ¶¶ 7–14, 19. Brown had 12 criminal history points, corresponding to a criminal history category of V. *Id.* ¶ 41. However, Brown was determined to be a career offender because his current offense and his two prior felony federal drug conspiracy convictions were regarded at the time as controlled substance offenses. *Id.* ¶ 25. Therefore, his base offense level was adjusted to 32, and his criminal history category was adjusted to VI. *Id.* ¶¶ 25, 36–37, 42. After adjustment for acceptance of responsibility, Brown's guideline range was 151 to 188 months. *Id.* ¶ 58.

On March 28, 2016, the Court sentenced Brown on the criminal offense to 120 months' imprisonment followed by three years of supervised release. No. 3:15-cr-17, Dkt. 21. On March

28, 2016, the Court revoked Brown's term of supervised release and sentenced Brown to 48 months' imprisonment to run consecutive to any other sentence imposed. No. 3:06-cr-21, Dkt. 150.

Brown, 45, is currently incarcerated at FCI Loretto, and the Bureau of Prisons ("BOP") estimates his release date as August 8, 2026.[3]

## FIRST STEP ACT (REVOCATION SENTENCE)

### 1. Eligibility

Brown argues that he is eligible for relief on his 48-month sentence for violating supervised release under § 404 of the First Step Act of 2018, and he asks this Court to exercise its discretion to reduce that sentence to time served. Def. Brief at 1–2, 4. The United States concedes that Brown is eligible for consideration of a sentence reduction on this sentence pursuant to § 404 of the First Step Act, but it opposes any reduction in Brown's sentence. Gov. Brief at 1, 20–21; *see United States v. Venable*, 943 F.3d 187 (4th Cir. 2019) (holding that defendant serving term of imprisonment for revocation of supervised release is eligible for consideration for a sentence reduction if original, underlying conviction is "covered offense" under First Step Act).

Generally, "[t]he court may not modify a term of imprisonment once it has been imposed." § 3582(c). However, the Court agrees with the parties that the criminal conviction underlying Brown's supervised release revocation sentence is a covered offense under the First Step Act. In 2007, Brown was sentenced under 21 U.S.C. §§ 846, 841(b)(1)(A), and 851 for conspiracy to possess with intent to distribute at least fifty grams of cocaine base and faced a statutory sentencing range of 20 years to life imprisonment at the time he was sentenced. Today, after the First Step Act's changes, Brown would be sentenced under 21 U.S.C. §§ 846, 841(b)(1)(B), and 851 for conspiracy to possess with intent to distribute at least 28 grams of cocaine base and would face a

---

[3] *See* Federal Bureau of Prisons, Inmate Locator, https://www.bop.gov/inmateloc/.

statutory sentencing range of 10 years to life imprisonment instead. Because Brown was sentenced under a statute for which sentences were modified by the Fair Sentencing Act and his violation of that statute occurred prior to August 3, 2010, Brown therefore is eligible for consideration of a reduction in his 48-month supervised release sentence under the First Step Act. *See United States v. Gravatt*, 953 F.3d 258, 264 (4th Cir. 2020)

### 2.   Consideration of Request

Section 404(c) of the First Step Act states that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." A district court's decision whether to afford relief to an eligible defendant under the First Step Act is discretionary. *Gravatt*, 953 F.3d at 261, 264; *United States v. Wirsing*, 943 F.3d 175, 186 (4th Cir. 2020). Thus, even where a defendant is *eligible* to seek relief to modify his sentence under the First Step Act, the question remains whether the defendant has shown that a reduced sentence is *warranted*. *See Venable*, 943 F.3d at 194–95 (distinguishing between the court's holding that a district court had authority to resentence a defendant, and whether the defendant was entitled to the exercise of such authority); *Gravatt*, 953 F.3d at 262 (even if a defendant is "eligible" to move for relief, that "does not mean the defendant is entitled to relief under the Act," rather, "[i]t only means that his motion is entitled to be considered on the merits").

To determine the sentence that the court would have imposed under the Fair Sentencing Act, the court must engage in an analysis that involves (1) the recalculation of the guidelines range "in light of 'intervening case law,'" and (2) a reconsideration of the 18 U.S.C. § 3553(a) factors, taking into account a defendant's post-sentencing conduct. *United States v. Lancaster*, 997 F.3d 171, 175, 177 (4th Cir. 2021) (quoting *United States v. Chambers*, 956 F.3d 667, 672 (4th Cir. 2020)) (requiring district court to apply non-retroactive intervening case law in *Norman*, 935 F.3d

6

at 237–39, that "indicate[s] that [the defendant] cannot now be sentenced as a career offender");
*see also United States v. Collington*, 995 F.3d 347, 355 (4th Cir. 2021) ("[D]istrict courts
must *correct* original Guidelines errors and apply intervening case law made retroactive to the
original sentence.") (emphasis in original); *Chambers*, 956 F.3d at 674. In determining a
revocation sentence, however, the Court considers only certain 18 U.S.C. § 3553(a) factors stated
in 18 U.S.C. § 3583(c). *Cf. United States v. Coston*, 964 F.3d 289, 297 (4th Cir. 2020).

### a.   Recalculation of the Guidelines Range

### i.   Maximum Authorized Revocation Sentence

When the underlying offense is a Class A felony, 18 U.S.C. § 3583(e)(3) authorizes a
maximum term of imprisonment for five years upon revocation of supervised release. An offense
punishable by a maximum sentence of life imprisonment is a Class A felony. *See* 18 U.S.C. § 3559.
As noted above, after the First Step Act's changes, Brown would be sentenced under
21 U.S.C. §§ 846, 841(b)(1)(B), and 851 for conspiracy to possess with intent to distribute at least
28 grams of cocaine base and would face a statutory sentencing range of 10 years to life
imprisonment. Even after the First Step Act, then, the maximum statutory penalty for Brown's
underlying offense remains life imprisonment, and that offense is therefore a Class A felony. *See
Venable*, 943 F.3d at 190. Accordingly, the Court finds that the maximum supervised release
revocation sentence authorized by statute in Brown's case is five years.

### ii.   Violation Grade

U.S.S.G. § 7B1.1(a) outlines three grades of supervised release violations. As relevant
here, a Grade A violation is

> conduct constituting (A) a federal, state, or local offense punishable by a term of
> imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled
> substance offense . . . ; or (B) any other federal, state, or local offense punishable
> by a term of imprisonment exceeding twenty years[.]

U.S.S.G. § 7B1.1(a)(1). By comparison, a Grade B violation is "conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year." U.S.S.G. § 7B1.1(a)(2).

Another court in this Circuit has held that the determination of a Grade A or B violation is a three-step inquiry. *United States v. Mack*, No: 4:08-cr-01252, 2021 WL 1381122, at *2 (D.S.C. Apr. 12, 2021). The district court must (1) make a factual determination about the conduct the defendant engaged in; (2) make a legal determination about whether that conduct "constitut[es] a federal, state, or local offense," and if so, which offense; and (3) make a legal determination about whether that offense meets at least one of the specific subsections listed in § 7B1.1(a). *Id.*; *see also United States v. Willis*, 795 F.3d 986, 993 (9th Cir. 2015) (noting that to find that defendant has committed a Grade A violation, the court must (1) determine that the defendant's conduct constituted "a federal, state, or local offense," and (2) determine if such an offense meets the specified criteria).

In defining "controlled substance offense" for a Grade A violation, the guidelines incorporate the definition in § 4B1.2(b). *See* U.S.S.G. § 7B1.1 cmt. n.3. The Fourth Circuit has not faced the exact question raised here—whether the categorical approach applies to determining whether the offense is a "controlled substance offense" for purposes of § 7B1.1(a)(1)(A)(ii)—but it has held that the categorical approach generally applies to determining whether an offense is a "controlled substance offense" under § 4B1.2(b), *see Norman*, 935 F.3d at 237–39. However, the Fourth Circuit has also explained that "Application Note 1 [to U.S.S.G. § 7B1.1] instructs that in grading a violation of supervised release, a district court may consider *not only conduct for which a defendant is prosecuted in a criminal case, but all of a defendant's conduct*, 'whether or not the

defendant has been the subject of . . . prosecution for such conduct.'" *United States v. Wynn*, 786 F.3d 339, 343 (4th Cir. 2015) (emphasis added).

Here, the Court first concluded that "[o]n multiple occasions [Brown] sold a quantity of suspected heroin and cocaine base to a confidential informant for the Blue Ridge Task Force and Richmond DEA." No. 3:06-cr-21, Dkt. 150 at 1; *see also* Dkt. 170 (describing five such sales during April 2015). As for the second step, the Court did not make an explicit legal determination regarding which federal, state, or local offense Brown committed. However, on the same day as his revocation hearing, Brown pleaded guilty pursuant to a plea agreement to one count of conspiracy to distribute and possess with intent to distribute heroin and cocaine base in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). No. 3:15-cr-17, Dkts. 7; 8.

Brown assumes that the Court determined that he violated his conditions of supervised release by committing a violation of 21 U.S.C. § 846; therefore, Brown contends that, at the third step of the inquiry, the Court cannot conclude that he committed a "controlled substance offense." Dkt. 3:06-cr-21, Dkt. 183 at 5–7; Dkt. 3:15-cr-17, Dkt. 45 at 5–7 (collectively, Reply Brief). Brown argues that *Norman*'s holding that conspiracy to possess a controlled substance with intent to distribute a controlled substance in violation of 21 U.S.C. § 846 is not categorically a "controlled substance offense" under U.S.S.G. § 4B1.2(b) precludes a determination that he committed a "controlled substance offense" and thus a Grade A violation. 935 F.3d at 237–39; *see id.* at 239 ("We therefore hold that a 'conspiracy' conviction under § 846 is a categorical mismatch to the generic crime of conspiracy enumerated in § 4B1.2(b).").

The United States contests this argument and insists that Brown committed a Grade A violation. Specifically, the United States argues that Brown's conduct determines the grade of violation and that the five distributions of cocaine base and heroin, which Brown did not contest,

are "controlled substance offenses punishable under both state and federal law by more than one year." Gov. Brief at 37–38.

Brown counters that "there is no evidence" that the United States proved by the preponderance of the evidence that Brown had committed distribution offenses. Reply Brief at 6. "Instead," Brown argues, "the only evidence is that the parties and the court relied on the fact of Mr. Brown's new federal conviction of conspiracy to distribute—not actual distribution offenses." *Id.* Brown further contends that the Court should not "employ . . . [a] 'way-back machine' to assume that the Government would have proved specific distributions at Mr. Brown's violation hearing." *Id.* at 7 (quoting *United States v. Pierre*, 372 F. Supp. 3d 17, 22 (D.R.I. 2019) (rejecting Government's argument that a defendant is not eligible for a sentence reduction under the First Step Act if the presentence report, but not the indictment, demonstrates that the offense conduct involved a drug weight exceeding the new thresholds); *see also United States v. Wirsing*, 943 F.3d 175 (4th Cir. 2019) (same).

Brown's argument fails to persuade the Court. Nothing in the judgment, No. 3:06-cr-21, Dkt. 150, or the violation report, No. 3:06-cr-21, Dkt. 170, suggests that the Court relied on the determination that Brown had committed the federal offense of conspiracy to possess a controlled substance with intent to distribute in violation of 21 U.S.C. § 846. Neither the judgment nor the violation report references 21 U.S.C. § 846 at all. Instead, as noted above, in revoking Brown's term of supervised release, the Court found that "[o]n multiple occasions [Brown] sold a quantity of suspected heroin and cocaine base to a confidential informant for the Blue Ridge Task Force and Richmond DEA." No. 3:06-cr-21, Dkt. 150. The Court finds that the judgment and violation report establish by a preponderance of the evidence that Brown's conduct consisted of federal offenses of possession with intent to distribute or distribution in violation of

21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Such federal offenses are "controlled substance offenses" under U.S.S.G. § 4B1.2(b). Accordingly, because Brown committed a controlled substance offense under federal law punishable by imprisonment for a term exceeding one year, the Court finds that Brown committed a Grade A violation.

### iii. Criminal History Category

Brown argues that his criminal history category would be IV rather than VI today given intervening changes to the guidelines. No. 3:06-cr-21, Dkt. 183 at 7–8.[4] First, Brown contends that he would no longer receive a point for committing the offense less than two years after release from imprisonment, since the Sentencing Commission amended § 4A1.1(e) of the guidelines to eliminate such points in 2010. No. 3:06-cr-21, Dkt. 183 at 7–8; *see* Dkt. 191 ¶ 36; *see also* U.S.S.G. App. C., amend. 742 (Nov. 1, 2010). Second, Brown argues that he received three points for three separate misdemeanors—two for driving on a suspended license, and one for reckless driving— for which he would not receive any points under U.S.S.G. § 4A1.2(c)(1) today, since they are neither similar to the offense of conviction nor resulted in a term of probation of *more than* one year or a term of imprisonment of at least thirty days. No. 3:06-cr-21, Dkt. 183 at 7–8; *see* Dkt. 191 ¶¶ 29–31; *see also* U.S.S.G. App. C., amend. 709 (Nov. 1, 2007). Brown concedes, however, that

---

[4] With respect to the underlying criminal conviction, in 2007, the Court found that Brown's base offense level was 36—the presentence investigation report found him responsible for approximately 921.3 grams of cocaine base, No. 3:06-cr-21, Dkt. 191 ¶¶ 11, 16—and his total offense level after credit for acceptance of responsibility was 33. *Id.* ¶ 25. Brown had 13 criminal history points, resulting in a criminal history category of VI. *Id.* ¶ 37. Given his acceptance of responsibility and the statutory mandatory minimum sentence of 20 years, his guideline range was calculated as 240 to 293 months. *Id.* ¶ 68. Today, Brown's base offense level would be 32; with acceptance of responsibility, his total offense level would be 29. The United States contends that his criminal history category would not change; with a criminal history category VI, his guidelines range on the underlying criminal conviction today would be 151 to 188 months. With a criminal history category IV, Brown's guideline range would be 121 to 151 months. Brown ultimately received and served a sentence of 60 months on this underlying criminal conviction, as noted above.

these changes have not been made retroactive and that his criminal history was correctly calculated at the time of sentencing. No. 3:06-cr-21, Dkt. 182 at 8; *see also* U.S.S.G. § 1B1.10(d) (listing retroactive amendments).

The Court declines to incorporate these non-retroactive amendments to the guidelines and finds that Brown's criminal history category for the supervised release revocation sentence and underlying criminal conviction remains VI. However, the Court will consider these changes in applying the § 3553(a) factors. Accordingly, the Court finds that Brown is in criminal history category VI.

### iv.  Revised Guideline Calculation

The Court finds that Brown committed a Grade A violation and was in criminal history category VI. Considering that Brown's underlying offense remains a Class A felony, his guideline policy statement range is 51 to 63 months. Because the statutory maximum revocation sentence is 60 months, the final revised guideline policy statement range is 51 to 63 months.

### b.  Consideration of Applicable § 3553(a) Factors Listed in § 3583(c)

As discussed above, considering intervening non-retroactive guideline amendments, the Court notes that Brown would have been in criminal history category IV if he were facing the Court for the first time on the underlying criminal offense in Case Number 3:06-cr-21—and thus on his violation of supervised release in that case—today. For a Grade A violation, and considering that Brown's underlying offense remains a Class A felony, Brown's guideline policy statement range as a criminal history category IV would be 37 to 46 months. The Court initially imposed a sentence of 48 months, a downward variance from the low end of the guideline range—51 months. A comparable downward variance from the low end of the guideline policy statement range as a criminal history category IV would be approximately 34 months.

With respect to his history and characteristics and the need for the sentence to provide him with needed treatment or training, Brown submits that he has been rehabilitated while incarcerated. BOP rates his recidivism risk level as low and classifies his security risk as low. No. 3:15-cr-17, Dkt. 33-1. Since his incarceration in 2015, Brown has maintained a clean BOP disciplinary record. No. 3:15-cr-17, Dkt. 33-2. He completed his GED while serving a prior sentence, and he has completed programming for anger management and drug education. No. 3:15-cr-17, Dkt. 33-1. Brown plans to reside with his wife in Louisa, Virginia, upon release, and he has an open offer to work as a carpenter/laborer upon release. No. 3:15-cr-17, Dkt. 33-3.

However, the Court must also consider other aspects of Brown's history and characteristics, in addition to the need for the revocation sentence to afford adequate deterrence to and to protect the public from Brown's criminal conduct. Brown was released from BOP custody to serve his term of supervised release in April 2013. Two years later,[5] Brown sold heroin and crack cocaine several time to a confidential informant observed by law enforcement. These instances of distribution were nearly identical to the underlying offense for which Brown was serving his term of supervised release. Indeed, this was the second time that Brown had violated his conditions of supervised release by selling cocaine base to a confidential information observed by law enforcement shortly after his release from BOP custody.

Taking all these factors into account, the Court finds that a revocation sentence of 34 months—a reduction of 14 months from Brown's current sentence—is appropriate.

---

[5] The United States notes that, according to the presentence report, Brown "immediately" began selling heroin and cocaine base upon his release in April 2013. No. 3:15-cr-17, Dkt. 17 ¶ 13. The Court does not consider this evidence here, as it is not discussed in the violation report.

## COMPASSIONATE RELEASE

Brown also seeks compassionate release from both sentences. Again, generally, "[t]he court may not modify a term of imprisonment once it has been imposed." § 3582(c). A defendant seeking relief under § 3582(c)(1)(A) has the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. McMillan*, No. 7:08-cr-31, 2020 WL 3213399, at *2 (W.D. Va. June 15, 2020). If a defendant has exhausted his remedies and shows that extraordinary and compelling reasons support a sentence reduction, the Court must consider the applicable sentencing factors under 18 U.S.C. § 3553(a) to determine whether a reduction is appropriate. *See* 18 U.S.C. § 3582(c)(1)(A).

### 1.   Exhaustion of Administrative Remedies

Neither party has addressed whether Brown exhausted administrative remedies. As the United States has not contested Brown's exhaustion of administrative remedies, the requirement poses no obstacle to the Court's consideration of Brown's request. *United States v. Sumblin*, No. 7:04-cr-66, 2021 WL 1432305, at *3 (W.D. Va. Apr. 15, 2021).

### 2.   Extraordinary and Compelling Reasons

A court

> may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, *if it finds that extraordinary and compelling reasons warrant such a reduction* . . . and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (emphasis added).

The Fourth Circuit has held that "district courts are 'empowered to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) (emphasis in original).

14

Brown makes two arguments in support of his motion for compassionate release: (1) that his medical conditions make him more susceptible for contracting COVID-19 and more likely to suffer serious consequences if he does contract COVID-19, and (2) that the Fourth Circuit's holding in *Norman*—that conspiracy to possess a controlled substance with intent to distribute a controlled substance in violation of 21 U.S.C. § 846 is not categorically a "controlled substance offense" under U.S.S.G. § 4B1.2(b)—constitutes an extraordinary and compelling circumstance warranting release. *See* 935 F.3d at 239. The Court considers each argument in turn.

### a. Particularized Susceptibility to and Increased Risk of Contracting COVID-19

Under some circumstances, "[a]n inmate's particularized susceptibility to COVID-19 and increased risk of contracting the virus may constitute an extraordinary and compelling reason justifying release." *United States v. Martin*, No. 1:05-cr-21, 2021 WL 1168696, at *2 (N.D. W. Va. Mar. 26, 2021) (citation omitted).

The parties do not dispute that Brown is overweight. Gov. Brief at 26–27; Reply Brief at 8–9. Brown also claims that he "may have chronic kidney disease" based on the results of a September 2020 blood test. Reply Brief at 9–10; No. 3:15-cr-17, Dkt. 49-1. The Centers for Disease Control and Prevention ("CDC") advise that being "overweight" and "[h]aving chronic kidney disease of any stage can make you more likely to get severely ill from COVID-19."[6]

This Court agrees with the United States that Brown has not met his burden to show that his medical conditions in the context of his incarceration during the COVID-19 pandemic constitute an extraordinary and compelling circumstance warranting release. First, at least one cohort study published by the CDC does not support a conclusion that overweight individuals

---

[6] *People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 8, 2021) (emphasis removed).

(BMI 25–29.9) face a higher risk—let alone a significantly higher risk—of severe outcomes if they contract COVID-19.[7] Second, as Brown concedes, he has not established—and cannot establish—that he has chronic kidney disease on the basis of one blood test with an adverse kidney function result. Without a diagnosis of chronic kidney disease or additional underlying medical conditions increasing his susceptibility to COVID-19 or his likelihood of severe outcomes if he contracts COVID-19, the Court cannot conclude that Brown's current health status is grounds for compassionate release. *See, e.g.*, *United States v. Montgomery*, No. CR CCB-15-468, 2021 WL 2187015, at *2 (D. Md. May 28, 2021) (finding defendant's overweight status and asthma of unspecified severity insufficient to show extraordinary and compelling reason for release); *United States v. Molina*, No. 3:12-CR-132, 2021 WL 1587904, at *2 (E.D. Va. Apr. 22, 2021) (finding no extraordinary and compelling reason justifying release where defendant's overweight status and hypertension were not serious and were instead chronic conditions that could be managed in prison)

### b. *Norman*'s Impact on Career Offender Enhancement

Brown argues that the Fourth Circuit's holding in *Norman*—that conspiracy to possess a controlled substance with intent to distribute a controlled substance in violation of 21 U.S.C. § 846

---

[7] *Morbidity and Mortality Weekly Report: Body Mass Index and Risk for COVID-19-Related Hospitalization, Intensive Care Unit Admission, Invasive Mechanical Ventilation, and Death—United States, March–December 2020*, CTRS. FOR DISEASE CONTROL & PREVENTION, March 21, 2021, https://www.cdc.gov/mmwr/volumes/70/wr/pdfs/mm7010e4-H.pdf (last visited June 8, 2021) (finding adjusted risk ratios for overweight population (BMI 25–29.9) under 65 years old, compared to normal weight population (BMI 18.5–24.9) under 65 years old, of 1.07 for hospitalization, 0.92 for ICU admission, 0.96 for invasive mechanical ventilation, and 0.90 for death).

is not categorically a "controlled substance offense" under U.S.S.G. § 4B1.2(b)—constitutes an extraordinary and compelling circumstance warranting release. *See* 935 F.3d at 239.[8]

Although the Fourth Circuit has held that *Norman*'s holding must be applied to a recalculation of the guidelines range upon resentencing under the First Step Act, *see Lancaster*, 997 F.3d at 175, 177, it has not yet considered whether *Norman*'s holding, standing alone, constitutes an extraordinary and compelling circumstance warranting relief.

However, the Fourth Circuit has held that a district court may consider "the severity of the defendant['s] . . . sentence[] and the extent of the disparity between the defendant['s] sentence[] and [that] provided for under [current law]" when deciding a motion for compassionate release. *McCoy*, 981 F.3d at 286. In *McCoy*, the Fourth Circuit considered a similar non-retroactive change in the law with an "exceptionally dramatic" impact on sentencing—"[t]he First Step Act's clarification of § 924(c)."—and determined that "stacked" § 924(c) sentences can constitute an "extraordinary and compelling" reason for relief under § 3582(c)(1)(A). *Id.* at 285. The court pointed to "two distinct features" of § 924(c) sentences relevant to applying the "extraordinary and compelling" reason standard: (1) "the sheer and unusual length of the sentences,"[9] particularly in

---

[8] The United States argued in its brief that the Court could not consider a non-retroactive change in sentencing case law in determining whether an extraordinary and compelling circumstance warranting compassionate relief exists because the sentencing guidelines policy statement does not permit relief based on such a factor. Gov. Brief at 33–36. But the United States made this argument without the benefit of the Fourth Circuit's holding in *McCoy* that there "is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3852(c)(1)(A)." 981 F.3d at 284.

[9] The Senate Report accompanying The Comprehensive Crime Control Act of 1984, which originally created 18 U.S.C. § 3582(c) and made compassionate relief motions subject to BOP control, suggests that sentence modifications may be "justified by changed circumstances," such as "cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defend[ant] was convicted have been later amended to provide a shorter term of imprisonment." S. Rep. No. 98-225, at 55–56 (1984). But according to an April 2013 report by the Department of Justice's Office of the Inspector General, "although the BOP's regulations

comparison to the "national average for a federal murder sentence in fiscal year 2018[, which] was 291 months," or just over 24 years,[10] and (2) the "gross disparity between those sentences and the sentences Congress now believes to be an appropriate penalty for [a defendant's] conduct." *Id.* (internal quotation marks and citations omitted).

Following *McCoy*, other district courts in this Circuit have found that they "may consider changes in sentencing law—even nonretroactive ones—in assessing whether a defendant has shown extraordinary and compelling reasons warrant a reduction in his sentence." *United States v. Stuart*, No. 5:92-CR-114-BR-3, 2020 WL 7232074, at *3 (E.D.N.C. Dec. 8, 2020) (finding that post-sentencing changes in statutory penalties for § 924(c), case law regarding career offender enhancement under the guidelines, and the potential impact of COVID-19 on defendant's health, taken together, constitute extraordinary and compelling reason justifying release). Two courts have specifically addressed defendants' arguments that they would no longer be considered career offenders under *Norman* if sentenced today. *See United States v. Trice*, No. 7:13-CR-34-1, 2021 WL 402462, at *3 (W.D. Va. Feb. 3, 2021) (Conrad, J.) (finding extraordinary and compelling reason for compassionate release where defendant sentenced to 151 months, a downward departure

---

and Program Statement permit non-medical circumstances to be considered as a basis for compassionate release, the BOP routinely rejects such requests and did not approve a single nonmedical request during the 6-year period of [DOJ's] review." U.S. DEP'T OF JUSTICE, *The Federal Bureau of Prisons' Compassionate Release Program* ii, https://oig.justice.gov/reports/2013/e1306.pdf (last visited Apr. 20, 2021). In the First Step Act, "Congress responded by eliminating the Bureau of Prisons' [exclusive] gatekeeping function over compassionate releases." *United States v. Maumau*, No. 2:08-cr-00758, 2020 WL 806121, at *6 (D. Utah Feb. 18, 2020).

[10] The national average for a federal murder sentence has since gone down. In fiscal year 2020, "[o]ffenders convicted of murder received the longest terms of confinement at 255 months on average," or just over 21 years. U.S. SENTENCING COMM'N, *Fiscal Year 2020: Overview of Federal Criminal Cases* 9 (Apr. 2021), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/FY20_Overview_Federal_Criminal_Cases.pdf (last visited Apr. 19, 2021).

from his career offender guideline range of 262 to 327 months, would face a guideline range of

100 to 125 months after *Norman*); *see also United States v. Spencer*, — F. Supp. 3d —, No. 2:11-

cr-30, 2021 WL 713287, at *3–4 (E.D. Va. Feb. 24, 2021), *appeal filed*, No. 21-6346 (4th Cir.

Mar. 8, 2021) (concluding that defendant's history and characteristics—including "an

exceptionally lengthy adult criminal history," being "incarcerated for substantial periods of time

prior to the instant offense," and engaging "conduct with respect to the instant offense . . . almost

immediately after he was released from prison"—counseled against finding extraordinary and

compelling reasons for sentence reduction even though defendant sentenced to 235 months, the

top of his career offender guideline range of 188 to 235 months, would face a guideline range of

110 to 137 months after *Norman*).

Here, Brown's sentence of 120 months on the conspiracy conviction in Case Number

3:15-cr-17 is not a shockingly long sentence, unlike those considered in *McCoy*. It is less than half

the national average federal murder sentence in fiscal year 2020 of just over 21 years.[11] Even

considering only the guideline ranges instead of the actual sentence Brown received does not

change this conclusion. *Norman* would change Brown's original guideline range from 151 to 188

months (total offense level 29, criminal history category VI) to 37 to 46 months (total offense level

15, criminal history category V). Neither the original guideline range nor the post-*Norman*

guideline range approaches a sentence of "sheer and unusual length" comparable to the ones that

the Fourth Circuit considered in *McCoy*. 981 F.3d at 285. However, the difference between

Brown's sentence of 120 months and the sentence he would receive post-*Norman* is still

substantial. Instead of 120 months, Brown would face a sentencing range of 37 to 46 months today.

The sentence Brown received is at least 74 months, or more than six years, longer than the high

---

[11] See *supra* n.10.

end of that guideline range, and nearly three times the median of that guideline range (41 to 42 months). When considering the guideline ranges instead of the actual sentence Brown received, the difference is greater. While not as dramatic as the decades-long differences the Fourth Circuit considered in *McCoy*, the Court finds a "gross disparity" in the sentences here. 981 F.3d at 285.

Under these circumstances, the Court finds that Brown's sentence is an "extraordinary and compelling" reason warranting a sentence reduction in light of *Norman*.

### 3.  Consideration of § 3553(a) Factors

If the Court finds extraordinary and compelling reasons that would support a sentence reduction, it still must "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Kibble*, 992 F.3d 326, 331–32 (4th Cir. 2021).

With respect to the defendant's history and characteristics and the need for the sentence to provide him with needed treatment or training, Brown submits that he has been rehabilitated while incarcerated. BOP rates his recidivism risk level as low and classifies his security risk as low. No. 3:15-cr-17, Dkt. 33-1. Since his incarceration in 2015, Brown has maintained a clean BOP disciplinary record. No. 3:15-cr-17, Dkt. 33-2. He completed his GED while serving a prior sentence, and he has recently completed programming for anger management and drug education. No. 3:15-cr-17, Dkt. 33-1. Brown plans to reside with his wife in Louisa, Virginia, upon release, and he has an open offer to work as a carpenter/laborer upon release. No. 3:15-cr-17, Dkt. 33-3.

On the other hand, in many ways, Brown's history and characteristics are very similar to the defendant in *Spencer*, whose request for compassionate release was denied. 2021 WL 713287, at *3–4. Like Spencer, Brown has "an exceptionally lengthy adult criminal history" dating back to 1994. *Id.* at *4; *see* No. 3:15-cr-17, Dkt. 17 ¶ 30. The presentence report describes nine adult

criminal convictions, some of which involved multiple counts. No. 3:15-cr-17, Dkt. 17 ¶¶ 30–38. As discussed at length above, these prior convictions include two prior federal convictions for conspiracy to distribute cocaine base, in 2000 and 2006. *Id.* ¶¶ 36–37. Brown's sentences on these convictions were both reduced several times, to time served of 31 months and 60 months, respectively. *Id.* Brown also served a prior revocation sentence of 30 months, which ran consecutive to the 60-month sentence. *Id.* As a result of these convictions, Brown had been "incarcerated for substantial periods of time prior to the instant offense," *Spencer*, 2021 WL 713287, at *4, including from January 24, 2000 to July 2, 2004 and from April 22, 2006 to April 17, 2013. No. 3:15-cr-17, Dkt. 17 ¶¶ 36–37. Finally, Brown, too, engaged in "conduct with respect to the instant offense . . . almost immediately after he was released from prison," *Spencer*, 2021 WL 713287, at *4; *see, e.g.*, No. 3:06-cr-21, Dkt. 191 ¶ 8 (noting Brown's release from custody in July 2004 and arrest for distribution of cocaine in November 2004); No. 3:15-cr-17, Dkt. 17 ¶¶ 13, 36–37 (noting Brown's release from custody in April 2013 and confidential informant's statement that he/she began purchasing heroin and crack cocaine from Brown in the fall of 2013).

The Court must also consider the need for the sentence to afford adequate deterrence to criminal conduct and to protect the public from Brown's criminal conduct. Brown's criminal history shows a "significant pattern of committing crime while out of custody," and the Court finds that "he is likely to return to criminal conduct shortly after his release from incarceration." *Spencer*, 2021 WL 713287, at *4 (internal quotation marks and citations omitted).

In addition, the Court must consider the need for the sentence to provide just punishment for Brown's offense. As noted above, following *Norman*, Brown's original guideline range of 151 to 188 months (total offense level 29, criminal history category VI) would become 37 to 46 months

(total offense level 15, criminal history category V) without the career offender enhancement. However, in his plea agreement, Brown stipulated that the career offender enhancement applied to his conduct. No. 3:15-cr-17, Dkt. 7 at 3. The Court may consider the defendant's agreement to a particular sentence or sentencing range in considering the § 3553(a) factors "when it decides whether a reduction is appropriate (or when it determines the extent of any reduction)." *Hughes v. United States*, 138 S. Ct. 1765, 1777 (2018) (discussing sentencing reductions under § 3582(c)(2)).

The Court finds that immediate release would not promote respect for the law, provide just punishment for Brown's offense, adequately deter criminal conduct, or protect the public from Brown's crimes. While the Court is encouraged by Brown's positive conduct while incarcerated, it finds that his rehabilitation does not outweigh these factors supporting continued incarceration. Considering all the § 3553(a) factors, however, including the changes to Brown's guideline range and his stipulation to a career offender enhancement in his plea agreement, the Court finds that a reduction in Brown's sentence is warranted. Accordingly, the Court will reduce Brown's sentence on the criminal conviction in Case Number 3:15-cr-17 from 120 months to 86 months.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motions to reduce sentence pursuant to the First Step Act of 2018 and for compassionate release under 18 U.S.C. § 3582(c)(1)(A), No. 3:06-cr-21, Dkt. 172; No. 3:15-cr-17, Dkt. 33. Specifically, the Court **MODIFIES** Defendant's sentences as follows:

1. The Court reduces Defendant's supervised release revocation sentence in Case Number 3:06-cr-21 to 34 months, to run consecutive to any other sentence imposed; and

2. The Court reduces Defendant's sentence on the criminal conviction in Case Number 3:15-cr-17 to 86 months.

3. All other terms of Defendant's sentence remain the same.

The Court **DENIES** Defendant's request for immediate release from custody.

It is so **ORDERED**.

The Clerk of Court is directed to send this Order to Defendant and all counsel of record.

Entered this <u> 11th </u> day of June, 2021.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

23